(73 App. Div. 372.)

STORZ v. KINZLER.

(Supreme Court, Appellate Division, First Department. June 13, 1902.)

**1. NOTES—DEFENSES—COLLATERAL AGREEMENTS.**

Refusal to perform a contemporaneous verbal agreement made at the
execution of a note given to secure a reduction of interest on a bond,
whereby the payee agreed to deliver the bond and a certain mortgage
to the maker when the note was paid if payment was enforced, is no
defense to an action on the note, in the absence of a tender and pay-
ment of the money due thereon into court.

**2. PAYMENT—PRESUMPTION.**

Plaintiff's intestate had been engaged in negotiating, purchasing, loan-
ing, and advancing money on realty bonds and mortgages, and de-
fendant had acted as agent for him, and had procured and sold to
intestate several bonds and mortgages. Plaintiff claimed that defendant
had received a certain sum of money to be invested, and produced a
receipt from defendant acknowledging the receipt of the money, which
contained the words "on demand," and that defendant owed this amount.
Defendant alleged that he had purchased mortgages for the intestate,
and the money was in payment of them, and proved that all the mort-
gages had been bought in his name, and assigned to the intestate.

*'Held*, that the fact that the mortgages were in intestate's possession and name at his death did not create a presumption that he had paid for them otherwise than by the money represented by the receipt.

Appeal from trial term, New York county.

Action by Katherine Storz, administratrix of the estate of Martin Storz, deceased, against Moses Kinzler.  From a judgment in favor of the plaintiff, and from an order denying motion for new trial, the defendant appeals.  Reversed.

Argued before HATCH, McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

William Rumsey, for appellant.
Philip J. Britt, for respondent.

INGRAHAM, J.  Two causes of action are alleged in the complaint:  First, to recover upon a promissory note dated June 1, 1900, whereby the defendant promised to pay on demand to the order of the plaintiff's intestate $4,000; and, second, to recover from the defendant the sum of $16,573 for money due from the defendant to the plaintiff's intestate.

As to the first cause of action, I think, upon the undisputed evidence, the defendant was liable.  He admits the making of the note, and the defense is that it was made at the special instance and request of the plaintiff's intestate, and was made, executed, and delivered by the defendant conditionally, and not absolutely, and mainly for the· benefit and accommodation of the plaintiff's intestate under the circumstances and conditions following:  That at the time of the making and delivery of this note the plaintiff's intestate was in possession of a certain bond and mortgage made by the defendant's wife, and covering certain real property in the city of New York, to secure the payment of $4,000; that the said property was about to be or had been acquired by the city of New York in certain condemnation proceedings for public purposes, and that plaintiff's intestate requested, for his benefit and accommodation, that the defendant would, in consideration of the plaintiff's intestate's reducing the amount of interest on the said bond and mortgage made by the intestate's wife from 5 to 4 per cent. per annum, execute and deliver to the plaintiff's intestate this promissory note in question, and promised and agreed that, if ever thereafter the defendant should be called upon to make good and pay the said note, plaintiff's intestate would at the same time and place, and as a condition precedent to the defendant's paying the same, execute and deliver, or cause to be executed and delivered, to the defendant or his assigns, an assignment of the aforesaid bond and mortgage, as well as of all the claim, rights, and demands which the plaintiff's intestate might have, own, possess, or be or become entitled to against the city of New York in consequence of said condemnation proceedings as such mortgagee; that prior to the commencement of the action the plaintiff demanded of the defendant the payment of the said note, whereupon the defendant, in accordance with his agreement with the plaintiff's intestate, demanded the performance of the aforesaid condition, which, however, the plaintiff refused to perform or comply with; and that the

defendant has been and still is ready and willing to pay the aforesaid promissory note, provided, however, the said plaintiff, for and on behalf of her said intestate, duly perform and comply with said condition upon which the same was executed and delivered. It is evident that this note was based upon a valuable consideration. This was the agreement by which the plaintiff's intestate had agreed to accept interest secured by this mortgage at the rate of 4 per cent., instead of 5 per cent., as provided for by the mortgage; and this was certainly a sufficient consideration to sustain a promise by the defendant to become personally liable to pay the amount of the mortgage. The note, therefore, being based upon a good consideration, the defendant was bound to pay it on demand. There was a contemporaneous verbal agreement, by which, upon the payment of the note, the plaintiff's intestate was to assign or transfer to the defendant the mortgage which he held upon the property belonging to the defendant's wife. This was not a conditional delivery of the note, and the obligation to pay the amount therein specified was, by its terms, unconditional. The defendant did not tender the amount due upon the note alleged, and in an action at law to recover the amount of the note the failure of the plaintiff's intestate to tender the bond and mortgage when the demand for payment had been made is not a defense. The defendant could have tendered the amount due on the note and demanded the performance of the condition, and, if he had made that tender, and kept it good by paying the money into court upon the commencement of the action, such tender might have been a valid defense to the action at law to recover the amount due. That this agreement to deliver to the defendant the bond and mortgage held by the plaintiff's intestate upon the payment of the note was a valid independent agreement that could be enforced may be conceded, and if he had paid the note, and demanded the transfer of the bond and mortgage, and had proved the agreement, he would be entitled to such a transfer; but without such tender and payment of the money into court there was not, I think, a defense to the legal cause of action to recover the amount due thereon.

As to the second cause of action, I think there should be a new trial. The complaint alleges that for several years prior to his death the plaintiff's intestate had been engaged in the business of negotiating, purchasing, loaning, and advancing money upon bonds and mortgages on real estate in the city of New York, and that the defendant acted as agent for the plaintiff's intestate in several of such business negotiations and transactions, and had procured for and sold to the plaintiff's intestate several bonds and mortgages upon real estate in said city and thereabouts; that "on or before August 20, 1901, said defendant received from plaintiff's intestate the sum of $16,573 to be invested by said defendant for the benefit of said plaintiff's intestate in the purchase of or in the loaning and advancing of said moneys upon bonds and mortgages upon real estate, or to be returned to said plaintiff's intestate upon payment"; that the defendant had not paid the same, or any part thereof, and is now justly indebted to the plaintiff in the sum of $16,573 and interest. The defendant, in his answer, alleges that from and after the 14th day of November, 1900, to the death of the plaintiff's intestate, the

defendant, at the request of the plaintiff's intestate, had laid out and expended divers sums of money amounting to the sum of $24,723 in the aggregate, of which sum he received from the deceased during his lifetime divers sums of money amounting in the aggregate to $16,573 in repayment on account, leaving due and owing to the defendant a balance of $8,150; that prior to the death of the plaintiff's intestate there existed a current running and open account between the parties; that from time to time during the said period there were payments made by the plaintiff's intestate to the defendant in and about the transactions, and from time to time the defendant disbursed sums of money for and on behalf of the plaintiff's intestate, and assigned and transferred during the said period to the plaintiff's intestate bonds and mortgages at agreed prices, and to an amount largely in excess of the sums so received by him from the plaintiff's intestate, the total amount thereof being $24,723, of which the defendant has received the sum of $16,573, leaving due the sum of $8,-150, for which sum the defendant demanded judgment. The reply denied each of the allegations contained in the counterclaim, except that the defendant had received from the plaintiff's intestate during his lifetime divers sums of money, amounting in the aggregate to $16,573, and alleged that the defendant and the plaintiff's intestate had numerous transactions with each other in and about the purchase, sale, assignment, and transfer of various bonds and mortgages, which involved the disbursing and paying of divers sums of money by said defendant for the plaintiff's intestate, which allegation the plaintiff admits. The relations between the plaintiff's intestate and the defendant were thus substantially admitted by the pleadings, as was the receipt by the defendant from the plaintiff's intestate of various sums of money aggregating $16,573; the sole question at issue upon the second cause of action being whether or not the defendant had repaid to the plaintiff's intestate, by the assignment to him of various bonds and mortgages, an amount equal to or in excess of the moneys that the defendant had received from the plaintiff's intestate. The plaintiff introduced in evidence a receipt for the moneys for which she sought to recover. That receipt is as follows:

"New York, August 20, 1901.

"Received from Martin Storz sixteen thousand and five hundred and seventy-three dollars. On demand.

"$16,573 00/100. Moses Kinzler."

The plaintiff was called as a witness, and testified that the defendant was her husband's agent for the purchase and investment of money upon bonds and mortgages in, this city, and that certain mortgages, which were produced in court, the plaintiff's intestate had received from the defendant. She then testified as to certain admissions or declarations made to her by the defendant, and was corroborated by her children and sisters and others. The total payment made by the defendant for the purchase of mortgages which became vested in the plaintiff's intestate was proved to have been $23,954. The defendant called as a witness Joseph Wilkenfeld, who was a lawyer, and a brother-in-law of the defendant. He testified

that on August 11, 1901, he had in his possession two or three bonds and mortgages of which assignments had been made to the plaintiff's intestate; that one of them was the bond and mortgage for $11,625, which the defendant had purchased and paid for; that after the 20th of August he delivered these bonds and mortgages to the plaintiff's intestate; that he was also in possession of the mortgage of one Baker to the defendant, the money on which had been advanced by the defendant, and which was subsequently assigned to the plaintiff's intestate. This witness also testified to a conversation between the plaintiff's intestate and the defendant in November, 1900, at which the defendant asked the plaintiff's intestate whether he would take this mortgage of $11,625; that the plaintiff's intestate replied that he did not then have the money, but that, if the defendant would purchase the mortgage, he (plaintiff's intestate) would repay the amount of the purchase money to the defendant, and would take the mortgage; that the witness acted as attorney under the direction of the defendant in preparing the assignments of these mortgages to the plaintiff's intestate. The defendant was called as a witness, and contradicted the plaintiff in relation to the admissions to which she had testified, and denied that he had ever admitted owing her the money, or ever promised to pay her. He further testified, without objection, that these bonds and mortgages which had been transferred to the plaintiff's intestate were purchased by him with his own money, and paid for by him; or the loans represented by them had been actually made by him, and had been subsequently transferred to plaintiff's intestate. There was no evidence of the receipt by the defendant of any money from plaintiff's intestate other than that specified in this receipt. The defendant having admitted that he received this sum from plaintiff's intestate to be invested for his benefit in the purchase of or in the loaning or advancing of said moneys upon bonds and mortgages on real estate, he is chargeable with the money that he had received for the purposes alleged. The burden was then upon him to show that he had invested this money which he had received in bonds and mortgages which had been transferred to the plaintiff's intestate. He proved that he had purchased bonds and mortgages, had paid for them with his own checks, and that they had been transferred to plaintiff's intestate; and there is no dispute but that the plaintiff found in the possession of her intestate the bonds and mortgages that had been paid for by the defendant and transferred to him to an amount in excess of the money paid by plaintiff's intestate to the defendant. It is true that some of these mortgages seem to have been transferred to the plaintiff's intestate prior to the date of the execution of this receipt, and in consequence of that fact, and the alleged declarations and admissions of the defendant, there was probably a question of fact for the jury to determine whether or not the money represented by this receipt had been accounted for by the defendant by the purchase and transfer to plaintiff's intestate of the mortgages specified. In submitting this question to the jury, the court stated the claims of the respective parties; that it had decided to leave the issues as questions of fact; and then, as to the legal presump-

tion that the jury were to apply and the rules of law applicable to the determination of the questions arising upon this second cause of action, the court seems to have relied upon answering certain requests to charge of the respective parties. The defendant requested the court to charge: "The fact that Kinzler received from Storz $16,573, as evidenced by his receipt, raises no presumption that any money was advanced by Storz to Kinzler, but the presumption is that the money was due from Storz to Kinzler." That request the court refused upon the ground that the receipt contained the words "on demand," and then stated to the jury: "The inferences to be drawn from the receipt—the logical conclusions—I submit to you upon all the testimony. * * * But, as I have already said, owing to the peculiarity of that receipt, I do not think it comes within the rule, and I must leave its interpretation and the weight it is to have to you to determine in the light of all the testimony." To the refusal to charge this request and to the charge as made in relation to this request the defendant excepted. The defendant then made several requests for an instruction that the mere giving of the receipt by Kinzler to Storz, unexplained, raises no presumption that Kinzler became indebted to Storz, but, on the contrary, that Storz made payment because the money was due to Kinzler. These requests were refused by the court, to which the defendant excepted. The court then, at the request of the defendant, charged: "When it appeared that the various mortgages were bought by Kinzler, and paid for by him, and by his direction assigned to Storz and received by him, the presumption arises that Storz became indebted to Kinzler for the amount thus paid for the mortgages;" and the court then added: "Unless that presumption is rebutted by competent and credible testimony, it has sufficient probative force to sustain the claim that Storz was indebted to Kinzler for the amount." The defendant then requested the court to charge: "Unless the plaintiff proves that the moneys thus advanced were repaid, the defendant is entitled to recover the amount so paid for the mortgages after deducting what was represented by the receipt." This was refused, and the defendant excepted. The court then charged: "If you find from all the evidence and proofs and the presumptions that Storz became indebted to Kinzler in the amount of these mortgages which Kinzler had bought and paid for, assigned, or caused to be assigned to him,—that there never passed from Storz to Kinzler any other or further consideration than the sixteen thousand dollars,—then you must find in favor of the defendant on his counterclaim;" whereupon the defendant excepted to so much of this charge as submitted to the jury the question whether Storz paid Kinzler anything more than the amount of the receipt. The defendant then requested the court to charge that "there is no evidence that Storz paid to Kinzler, on account of the moneys advanced for the purchase of those mortgages, any greater sum than is represented by the receipt." This the court refused to charge, and the defendant excepted. The court, therefore, having charged the jury that a presumption arising that Storz became indebted to Kinzler for the amount thus paid for the mortgages, and that, un-

less that presumption was rebutted, the defendant was entitled to recover, and that if the jury should find that there had not passed from Storz to Kinzler any other or further consideration than the $16,000, then the jury must find in favor of the defendant, at the request of the plaintiff charged that the mortgages to Storz and the assignments of the bonds and mortgages to him, "being in his name and in his possession at the time of his death, creates the presumption not only that he was the lawful owner and holder of the bonds and mortgages, but also that he had paid for them." To that charge the defendant excepted, and in view of this charge the defendant's counsel requested the court to charge that, when it appeared that the assignments of those mortgages were paid for by Kinzler, any presumption that might have existed before that time that Storz had paid for them when they were turned over to him was overthrown; the proposition being that, whatever presumption might arise from the fact that the mortgages were turned over to Storz was overthrown when it was made to appear that they were paid for by Kinzler out of his own money. This was declined, and the defendant excepted. Subsequently, at the request of the plaintiff, the court charged "that the mortgages to Storz and the assignments of bonds and mortgages to Storz, being in his name and in his possession at the time of his death, creates the presumption not only that he was the lawful owner and holder of the bonds and mortgages, but also that he had paid for them"; and to that counsel for the defendant excepted.

From the statement of these various requests to charge it must be evident that the jury could have had but little idea of the real question that they were to determine. Here the undisputed evidence, based on the plaintiff's own allegation, was that the defendant had been the plaintiff's intestate's agent, and had received money from him to invest in bonds and mortgages. To prove that, she produced a receipt for a sum of money, dated August 20th. The defendant admitted this allegation of the relations between the parties, admitting that he had received this sum of money, and alleged and proved that he had invested moneys for the plaintiff's intestate in excess of the sum received, which were represented by the bonds and mortgages which he had transferred to the plaintiff's intestate. In view of this conceded relation that existed, and the business that had been transacted between these parties, and the fact, which was proved without contradiction, that all of these mortgages had been paid for by the defendant with his own money, and transferred to the plaintiff's intestate, I think that the finding of these mortgages in the possession of the plaintiff's intestate upon his death raised no presumption that he had paid for them otherwise than by the money represented by this receipt. Yet the jury were expressly told, against the objection and exception of the defendant, that these mortgages, and the assignments of them, being in the plaintiff's intestate's name, and in his possession at the time of his death, creates the presumption not only that he was the lawful holder of the bonds and mortgages, but also that he had paid the defendant for them. The presumption, if any, was that these mortgages had been purchased by the defendant, and transferred to the plaintiff's intestate

in pursuance of his employment; but there was no presumption that the plaintiff's intestate had paid the defendant the amount that he had paid out for the plaintiff's intestate's account. As a general rule, the interpretation of all written instruments is for the court, and not for the jury. It is only where there is a dispute of fact, or facts are proven from which contrary inferences could be drawn, and where such inferences would explain ambiguities in written instruments, that the court is justified in leaving any question as to the construction of such instruments to the jury; and then it is the duty of the court to instruct the jury as to the different constructions claimed, and to submit to them the facts, instructing them that, if they find one set of facts to be true, the instrument is to be construed as claimed by one of the parties, while, if the other is found to be true, it is to be construed as claimed by the other. Upon the whole case, considering the manner in which this case was submitted to the jury and the error in the charge as to the presumption that the jury were authorized to draw from the possession of these bonds and mortgages by the plaintiff's intestate, I think that justice requires that there should be a new trial.

There are rulings upon questions of evidence which present serious questions, but, as there must be a new trial for the reasons stated, it is not necessary that they should be considered.

The judgment appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.