(123 App. Div. 236.)

JONES v. GOULD et al.

(Supreme Court, Appellate Division, First Department. January 10, 1908.)

1. PLEADING—ACTION—NATURE AND FORM—DETERMINATION.

It is not the title of the action or the prayer for judgment, but the facts set out in the complaint, which determine the kind and character of the cause of action alleged.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, § 108.]

2. SAME—COMPLAINT—REFERENCE TO AGREEMENT.

An agreement, referred to in a complaint and made a part thereof, is as much a part of the complaint as though it had been fully set forth therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, §§ 53–57.]

3. PRINCIPAL AND AGENT—LIABILITY OF AGENT—ACTS OF AGENT WITHIN AUTHORITY.

Where a person acts and contracts avowedly as the agent of another, who is known as the principal, his acts and contracts, within the scope of his authority, are the acts and contracts of the principal and involve no personal liability on the agent's part, unless it is the intention of the parties that he should be personally liable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, §§ 458–464, 467–471.]

4. SAME—MANAGERS OF SYNDICATE—PERSONAL LIABILITY—PLEADING—SUFFICIENCY OF ALLEGATIONS.

A complaint alleged an agreement that defendants and those who should unite with them for the purposes of the agreement should be known as "syndicate subscribers," and that defendants should be known and act as "syndicate managers" and should have sole direction of its operations, and for that purpose were irrevocably appointed by the subscribers as their agents and attorneys for the syndicate transactions, and that defendants should not be liable for any act done under the agreement, except for want of good faith and failure to exercise reasonable diligence. The complaint further alleged that defendants requested plaintiff to purchase land, pursuant to their authority as managers of the syndicate and for its use, and that plaintiff in pursuance of such request purchased the land and advanced the purchase price for defendants as managers and at their special request. Held, that the complaint stated no cause of action against defendants personally.

5. SAME—EVIDENCE.

Evidence examined, and held not to show that officers of a syndicate contracting in relation thereto assumed a personal liability.

6. JOINT ADVENTURES—LIABILITIES OF MANAGERS.

Where, under a syndicate agreement, the managers were not partners, the statement of one could not bind the other managers personally on a separate and independent agreement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Joint Adventures, § 8.]

7. SAME—RELATION AMONG MANAGERS—EVIDENCE.

Where a subscriber to a syndicate formed under an agreement sues the managers thereof on a contract alleged to have been made by them with him under authority conferred on them by the agreement, whether defend-

ants were partners in the transaction must be determined by the agreement itself, and where ·it is unambiguous it is the only evidence of the relations which they sustained to each other.

8. CONTRACTS—CONSTRUCTION—QUESTION OF LAW.

The construction of an agreement is for the court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 767–770.]

Appeal from Trial Term.

Action by John S. Jones against George J. Gould and others. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Reversed, and new trial ordered.

See 107 N. Y. Supp. 661.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Rush Taggart, for appellants.
David McClure, for respondent.

McLAUGHLIN, J. The complaint in this action alleges, in substance, that the defendants, on or about the 2d of December, 1901, prepared a written agreement, which is. made a part of the complaint, whereby they and the parties who should unite with them for the purposes of an agreement should be known as "syndicate subscribers" and that defendants should be known as "syndicate managers," and the venture and all the parties in interest therein to be known as the "Little Kanawha Syndicate." The principal terms of the agreement are specifically set forth, and it is alleged:

"That on or about the month of October, 1902, said defendants, pursuant to the power and authority vested in them as managers of said syndicate, requested this plaintiff to purchase for the use of said defendants as managers ·of said syndicate, and for the use of said syndicate, and for the purposes prescribed in and by said syndicate agreement," certain coal lands in Ohio, and "to advance and pay for, on account of defendants as said managers as aforesaid, the purchase price thereof," which, together with plaintiff's expenses and commissions, "the said said defendants then and there promised and agreed to pay to this plaintiff."

It is further alleged:

"That the plaintiff, in pursuance of said request of defendants as aforesaid," purchased the land in Ohio and "advanced for the said defendants as managers as aforesaid, and at their special instance and request, the purchase price of said lands, which was the sum of three hundred and seventy thousand dollars ($370,000), which the defendants then and there promised and agreed to repay to the plaintiff, together with the interest thereon from the day of said purchase; that the plaintiff also paid out, at the like special instance and request of said defendants, large sums" in examining the properties, aggregating $90,000, which the plaintiff's labors and services were reasonably worth, and which "the defendants then and there undertook and agreed to pay to the plaintiff."

It is also alleged that the plaintiff, at the request of the defendants, caused a corporation to be incorporated, to which the title to said lands was conveyed, and that the plaintiff offered, and does offer, to transfer or convey to the defendants, either all the capital stock of said corporation or all the said lands upon payment of the costs and reasonable compensation to him for the work done by him at the request of the

defendants, but that "said defendants, though often requested so to do, have failed and refused, and still fail and refuse, to pay to the plaintiff the above-named sums, or any part thereof." The complaint demands judgment against the defendants for the sum of $460,000, with interest and costs. The jury rendered a verdict in favor of the plaintiff in the principal sum of $470,016 and interest, and after their discharge the court permitted the plaintiff to amend the complaint to conform to the proof, by increasing the amount demanded to this sum, with interest. From the judgment entered upon this verdict, and from an order denying a motion for a new trial, the defendants appeal.

At the trial, at the close of plaintiff's case, and also at the close of the whole case, the defendants moved to dismiss the complaint upon various grounds, and among others that it failed to state a cause of action against the defendants personally. The motions were denied, and an exception taken in each instance. I am of the opinion that the exceptions were well taken and call for a reversal of the judgment. The action, so far as its title is concerned, is against the defendants personally, and that is the judgment demanded; but the facts pleaded do not state a cause of action against them personally. It is not the title of the action, or the prayer for judgment, but the facts set out in the complaint, which determine the kind and character of the cause of action alleged. The syndicate agreement referred to in the complaint, and made a part thereof, is just as much a part of the complaint as though it had been fully set forth in the complaint itself. This agreement shows beyond question that whatever the defendants were authorized to do in pursuance of it was not to be for themselves personally, but for the benefit of the syndicate subscribers, and the complaint alleges that the defendants, in pursuance of the power thus conferred, requested the plaintiff to purchase the lands referred to and advance the money, which he claims he did. Where a person acts and contracts avowedly as the agent of another, who is known as the principal, his acts and contracts, within the scope of his authority, are considered the acts and contracts of the principal, and involve no personal liability whatever on the part of the agent. Am. & Eng. Enc. of Law (2d Ed.) vol. 1, p. 1119; Hall v. Lauderdale, 46 N. Y. 70; Commercial Bank v. Waters, 45 App. Div. 441, 60 N. Y. Supp. 981, affirmed 167 N. Y. 583, 60 N. E. 1109; Crandall v. Rollins, 83 App. Div. 618, 82 N. Y. Supp. 317; Anderson v. English, 105 App. Div. 400, 94 N. Y. Supp. 200; Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050. Under such circumstances the agent does not become personally liable unless it is the intention of the parties that he shall. The rule is tersely stated in Hall v. Lauderdale, supra, as follows:

"When the agency is disclosed, and the contract relates to the matter of the agency and is within the authority conferred, the agent will not be personally bound, unless upon clear and explicit evidence of an intention to substitute or superadd his personal liability for or to that of the principal. * * * And when the act is within the authority the presumption is that the agent intends to bind the principal, and not himself."

The syndicate agreement provides that the defendants should be known and act as syndicate managers, having sole direction of the operations of the syndicate, and for this purpose were irrevocably ap-

pointed by the subscribers as their agents and attorneys for the syndicate transactions. It was further provided therein that neither they nor any of them should be liable under any of the provisions of the agreement, or in or for any matter connected therewith, except for want of good faith and the failure to exercise reasonable diligence. Whether they were thus constituted joint agents or trustees of the syndicate subscribers, or what their relation inter sese was, it is unnecessary to determine, because the allegations of the complaint are so clear and explicit that they cannot possibly be misunderstood. They are that the defendants requested the plaintiff to purchase the lands pursuant to their power and authority as managers of the syndicate and for its use and purposes, and that plaintiff "in pursuance of said request of defendants as aforesaid" purchased the lands and "advanced for the said defendants, as managers as aforesaid and at their special instance and request," the purchase price. There is not a single fact stated in the complaint which either directly or inferentially charges that the defendants acted for themselves personally, or for any one except the syndicate, or that the plaintiff did not fully understand that fact, or that the defendants intended to add their personal liability to that of the syndicate. On the contrary, the complaint, as already indicated, unmistakably shows that whatever the defendants did they did in pursuance of the agreement and for the benefit of the syndicate. It is true there is an allegation that "the said defendants promised and agreed to pay"; but the only correct or logical inference to be drawn from these words, when read in connection with the other allegations of the complaint, is that the defendants' promise and agreement was not for themselves personally, but was made for and on behalf of the syndicate as its managers. Indeed, there is an express allegation that the defendants were acting for the syndicate and within their authority, from which the law presumes, in the absence of statement of facts to the contrary, that they intended to assume no personal liability.

But if I am in error as to the proper construction to be put upon the complaint, and that there are allegations therein sufficient to state a cause of action against defendants personally, then I think the plaintiff failed to prove the cause of action alleged. There is no evidence set out in the record, as I read it, sufficient to sustain a finding that in any of the transactions referred to with the plaintiff they assumed a personal liability. All of these transactions were openly and avowedly for the "Little Kanawha Syndicate," and the plaintiff knew it. He was one of the subscribers to the syndicate agreement. He testified, in answer to his own counsel, referring to conversations with defendant Ramsey:

"I told him * * * that, unless some arrangement could be made to settle with me for the lands that I had purchased for the syndicate, I would have to bring suit against the syndicate and its managers."

He also testified:

"I told Mr. Ramsey that unless I got a settlement I should have to bring suit against the syndicate, and he said he did not blame me, and he would make me a good witness."

It is perfectly apparent from plaintiff's own testimony that he dealt with defendants, not personally, but as managers of the syndicate. He

could only recover from them personally by showing that they had exceeded their authority, which is not claimed, or that they had expressly made themselves personally responsible. The defendant Ramsey is the only defendant who had direct dealings with the plaintiff, and the judgment could be sustained only by holding that the defendants were partners, and for that reason Ramsey's statements and declarations were binding on the other two members. The plaintiff's case was tried upon the theory that the agreement constituted the defendants partners, and that they became liable as partners and principals. The evidence at the trial did not sustain this theory; on the contrary, disproved it. The agreement provided that they should act as managers and have exclusive control of the operations of the syndicate, for which they were to receive a certain commission. They were also to be subscribers, and as such were to participate in the profits and losses, but on exactly the same terms as the other subscribers. It was further provided in the agreement that:

"Nothing contained in this agreement, or otherwise, shall constitute the syndicate subscribers partners with the syndicate managers or with one another, or render them liable to contribute more than their ratable amounts as aforesaid, or entitle them to any participation in the results or profits of said syndicate other than as specified in this agreement."

The defendants, as subscribers, were not partners and there is nothing in the agreement which makes them, as managers, partners, and to so hold there must be read into the agreement a provision which it does not contain. Therefore the statement of one could not bind the others personally on a separate and independent agreement. The motion of the defendants, therefore, should have been granted to dismiss the complaint at the close of the whole case.

I am also of the opinion that the court erred in submitting to the jury the question of whether the defendants were partners and contracted with the plaintiff as such. The evidence is insufficient to sustain a finding to that effect. The syndicate agreement shows they were not partners. The plaintiff was one of the syndicate subscribers, and was chargeable with knowledge of its provisions, and if the defendants exceeded their authority he was bound to know it. But there is no claim on the part of the plaintiff that the defendants did in fact exceed their authority. On the contrary, what is claimed is that whatever they did was by virtue of the authority conferred upon them by the agreement. Whether the defendants, therefore, were partners in the transaction necessarily had to be determined by the agreement itself. It is not claimed there was any ambiguity in the terms of the agreement, and therefore it was not only the best, but the only, evidence as to the relation which the defendants sustained to each other. The construction to be put upon the agreement was for the court, and not the jury. Dwight v. Germania Life Ins. Co., 103 N. Y. 341, 8 N. E. 654, 57 Am. Rep. 729; Brady v. Cassidy, 104 N. Y. 147, 10 N. E. 131; Storz v. Kinzler, 73 App. Div. 372, 77 N. Y. Supp. 64. The trial court, therefore, erred in directing the jury to consider the syndicate agreement in determining whether the relation of partners existed between the defendants.

Other questions are raised by the appellants which would require serious consideration; but, having reached the conclusion, for the reasons above given, that there must be a new trial, it seems unnecessary to pass upon them.

The judgment and order appealed from, therefore, must be reversed, and a new trial ordered, with costs to appellants to abide the event. All concur.