ULYSSES SAYER, Respondent, *v.* THOMAS R. WILSTROP, Appellant.

Third Department, March 17, 1922.

Contracts — action for breach of contract to deliver milk to factory — contract signed by several parties each agreeing to furnish milk from number of cows set opposite signatures — complaint against one of parties states cause of action at law — measure of damages is loss of profits — loss or depreciation on plant not element of damages — loss of future profits allowable — party cannot object to reference as to damages where he acquiesced at trial in statement by court that parties had agreed to refer question of damages — order of reference directing referee to take and report evidence as to damages with recommendation improper — direction to report on damages accruing from violation of contract by other parties improper.

The plaintiff, a manufacturer of butter and cheese, signed a contract with the defendant and several other milk producers whereby the plaintiff agreed to erect and equip a factory and the defendant and other producers agreed to deliver to the plaintiff's factory the milk produced by the number of cows set

opposite their respective signatures to the contract. Under the contract the defendant agreed to deliver the milk of eighteen cows. The complaint alleged that the defendant failed to deliver the milk of eighteen cows or any cows for a stated time and demanded judgment that the defendant account for the proceeds from the milk of eighteen cows during the time he failed to deliver it and for judgment against the defendant for the amount found due to the plaintiff upon said accounting.

*Held*, that the complaint states a cause of action at law to recover damages for breach of contract.

The plaintiff has by his complaint fixed the measure of damages which must be, thereunder, the loss of profits which he has sustained and will sustain because of the failure on the part of the defendant to deliver to him the milk of eighteen cows.

Loss or depreciation on the building and equipment cannot be an element of the damages, as the plant and equipment may be used to serve all who may become patrons irrespective of whether they signed the contract or not.

While loss of future profits is allowable as a part of the damages those profits must be limited to the milk of eighteen cows.

The defendant cannot claim that the order referring the question as to the amount of damages to a referee for determination, after the verdict of the jury had established the fact of defendant's liability, was made without his consent, since he must be deemed to have acquiesced in the making of the order, as it appeared that the court stated at the trial that it had been agreed between the court and the attorneys to submit to the jury only the question of liability and that if the jury found the defendant liable the case would be finished before a referee, and that the defendant did not object to that statement.

But the order of reference which directed the referee to take and report the evidence as to damages with his recommendation was improper, for it should have directed him to hear and determine the question of damages.

Furthermore, it was improper to direct the referee, in effect, to take proof of the damages accruing to the plaintiff by reason of the violation of the contract by the other subscribers thereto, for their liability was not involved in the present action.

APPEAL by the defendant, Thomas R. Wilstrop, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of St. Lawrence on the 24th day of June, 1921, upon the report of a referee; also from an order of the Supreme Court, made at the Schenectady Special Term and entered in the office of said clerk on the 24th day of June, 1921, confirming the report of the referee upon which the said judgment was entered; also from two orders of reference herein dated the 5th day of March, 1920, and the 23d day of April, 1920, respectively; also from an order entered in said clerk's office on the 21st day of July, 1921, denying defendant's motion to vacate said orders of reference and confirmation and the judgment in this action, and also from an order of the Supreme Court, made at the St. Lawrence Special Term and entered in said clerk's office on the 21st day of July, 1921, denying defendant's motion for a new trial made upon the minutes.

*George E. Van Kennen,* for the appellant.

*Lawrence Russell,* for the respondent.

COCHRANE, P. J.:

I agree with Mr. Justice HINMAN that the complaint alleges a cause of action at law and not in equity. But I go further. I think the complaint determines the theory of damages to which the plaintiff is entitled. It does not purport to set forth the entire contract, but a copy " as to the essential parts thereof is annexed " thereto without disclosing the various contracting parties, and the allegation of the complaint is that in respect to this contract defendant agreed " to deliver thereunder the milk of eighteen (18) cows." The breach of the contract by the defendant is specifically alleged to consist in his failure " to take to said building pursuant to said agreement the milk of said eighteen cows or of any cows." The reason assigned in the complaint for an accounting is that the plaintiff " has no personal knowledge as to how much milk was given by the eighteen cows or their substitutes, * * * or what price was received for the milk of said cows, or of what quality said milk was, or the amount thereof, and all of said facts are peculiarly within the knowledge of said defendant." The only relief demanded is that the defendant account " for the proceeds of the milk of eighteen cows " and that plaintiff have judgment for the amount found due on said accounting. No inference can be drawn from the complaint that there was any failure on the part of any of the contracting parties to perform the contract except on the part of the defendant to deliver the milk of his eighteen cows. The suggestion would occur to no one perusing the complaint and giving it a most liberal construction that the plaintiff was complaining of the failure to perform the contract by any party thereto other than the defendant or of any failure on his part except in respect to the milk of eighteen cows. It seems safe to say that the plaintiff must, when he framed the complaint, have intended that no other inference should be drawn. He sought damages only for the defendant's individual non-performance and without reference to any non-performance by any other party to the contract. That such was his intention is made more clear from the fact that he brought sixteen separate actions against as many parties to the contract as he claimed had defaulted. It is fundamental that a recovery must be *secundum allegata et probata*. It is useless, therefore, to discuss various remedies or the damages to which the plaintiff might be entitled under this contract. He by his complaint has fixed the measure of damages and the complaint must, therefore, be our guide in applying such measure of damages. Such measure of damages is the loss of profits which the plaintiff has sustained and will sustain because of the failure to deliver to him the milk of eighteen cows

and without reference to any failure to deliver milk by any of the other contracting parties. Viewed in this aspect the problem of damages is not very difficult or complicated. The plaintiff has his plant and equipment ready to serve all who may become his patrons irrespective of whether or not they signed his contract. Loss or depreciation in the building or plant is not an element of the problem. Special damages are not claimed. Undoubtedly the rule declared in *Nash* v. *Thousand Island Steamboat Co.* (123 App. Div. 148) as to future profits applies in this case. But such profits should be limited to the milk of eighteen cows and no more. The simple question is how much milk would eighteen cows produce during the life of the contract and what would be the profit to the plaintiff for manufacturing into butter or cheese or otherwise handling said milk at " the ruling price."

The parties consented to try the question of defendant's liability before taking up the question of damages. The verdict of the jury establishes the fact of defendant's liability. The extent of that liability remains to be determined. After the evidence was closed and before the case was submitted to the jury the trial justice stated that it had been agreed between the court and the attorneys to submit to the jury only the question of liability and that if the jury found liability the case would be finished before a referee. To this statement the defendant made no objection. Apparently it expressed the understanding of the court and attorneys on both sides. The silence of the defendant at that time constituted an acquiescence in such a disposition of the case even though there may have been no expressed agreement to that effect. The order of reference recites that it was granted against the opposition of the defendant. The order was granted more than a month after the trial and the opposition by the defendant therein mentioned must be construed with reference to the attitude which he assumed at the trial. It was too late after the trial to repudiate such attitude. If objection had then been taken the course of the trial might have been different. Nor is it necessary to hold that there was any attempted repudiation of the former acquiescence by the defendant in a reference. The objection specified in the order of reference should be construed, not as an objection to the fact of the reference, but to the kind of reference which was being ordered. The order is objectionable in two respects: *First.* It directed the referee to take and report the evidence as to damages with his recommendation. The referee took the place of the jury and the order should have directed him to hear and determine the question of damages as a jury would have done. Section 1015 of the Code of Civil Procedure does

not apply. (*Lindner* v. *Starin*, 128 App. Div. 664, 671.) *Second.* The order directed the referee to " take proof of the damages accruing to the plaintiff by reason of the violation of the said contract by any of the subscribers thereto, except said plaintiff, including not only this defendant but all of the subscribers thereto, and to report the same to this court with his recommendation." For the reasons heretofore stated this provision was clearly erroneous. It introduced into the question of damages elements which under the complaint were entirely foreign thereto.

My conclusion is that the judgment and order of reference should be reversed and a new trial granted only as to the question of damages before a referee to be appointed who shall hear and determine that question, with costs of this appeal to the appellant to abide the event.

All concur, except HINMAN, J., concurring in part in separate opinion; VAN KIRK, J., not sitting.

HINMAN, J. (concurring in part):

The plaintiff is a factory man engaged in the manufacture of butter and cheese. The defendant is a milk producer and resides near Rensselaer Falls, St. Lawrence county, N. Y.

The contract in question was entered into on or about November 22, 1916. The plaintiff was the party of the first part and the defendant with fifty-one other milk producers were the parties of the second part. The contract, so far as material, provided as follows:

" In consideration of the joint and several undertaking on the part of the parties of the second part evidenced by their signatures hereto, the party of the first part agrees, and in consideration of the undertaking on the part of the party of the first part hereto the parties subscribing their names hereto do jointly and severally undertake and agree as follows:

" The party of the first part agrees to build, equip and maintain for the period of eight (8) years, a suitable building at Rensselaer Falls in the Town of Canton, County of St. Lawrence and State of New York, for operation on or before April 1, 1917 as a butter or cheese factory, or milk shipping station, suitable for shipping milk to New York City, together with suitable and proper machinery and appliances, said building, machinery and appliances to be of modern and suitable character and ample to take care of the supply of milk hereinafter agreed to be delivered by the parties of the second part, the work of construction to begin within a reasonable time after the full execution of this instrument and to be continuous so far as the conditions permit until completion, and to operate

the same, either as a butter or cheese factory or milk receiving station, for the joint benefit of the parties hereto in the customary manner during said period of eight (8) years and to receive the ruling price for manufacturing.

" The parties of the second part hereby jointly and severally undertake and agree with the party of the first part, and each with the other of the parties of the second part, that there shall be delivered at the proposed butter and cheese factory or milk receiving station beginning with the completion and opening thereof for business the milk of eight hundred (800) cows continuously during said period of eight years except R. L. Wilson and W. L. Herring five years according to the usual dairy custom in the neighborhood, it being understood between the parties of the second part, each with the other, that each of the parties of the second part is to deliver at the said factory during said period the milk of approximately the number of cows set opposite his name as subscriber hereto."

A factory was built and equipped by the plaintiff costing approximately $11,000. It was opened for operation April 1, 1917. The fifty-two contract patrons delivered the milk of their respective dairies aggregating 648 cows in all. This defendant delivered the milk of 18 cows from April 1, 1917, to October 10, 1918. Several milk producers who did not sign the contract delivered milk to the factory but the number of cows represented by these producers is not indicated. During the time covered by this controversy the plaintiff manufactured practically all of the milk into cheese. In November, 1917, dissatisfaction arose amongst some of the patrons because milk was not shipped to the New York market in liquid form where the proceeds therefrom would have been much larger. As a result six of the contract patrons discontinued the delivery of milk to the factory about November 15, 1917. For similar reasons ten other contract patrons discontinued delivery of milk between July 10, 1918, and November 14, 1918, the defendant discontinuing about October 10, 1918.

In April, 1919, the plaintiff brought separate actions against the sixteen contract patrons who had withdrawn delivery of milk from the factory and demanded an accounting. Issues were joined therein, and the action against this defendant was tried at the January term, 1920. Testimony was introduced by both parties bearing upon the question of the performance of the contract. It was determined apparently by acquiescence of the parties to submit to the jury simply the issue of liability and to leave the matter of damages to later determination. In order to determine

24

the question of liability the court submitted to the jury specific questions as follows:

" 1. Did this plaintiff perform the contract on his part? If the answer to the first question be no, then

" 2. Did this defendant perform the contract on his part?"

The jury brought in a verdict answering question No. 1 in the affirmative. The defendant made a motion for a new trial on the minutes on the grounds enumerated in section 999 of the Code, which was denied. The court then directed that a referee be appointed to take and report the evidence with his recommendation thereon upon the question of damages. In the order of reference it was further ordered " that the said referee · * * * take proof of the damages accruing to the plaintiff by reason of the violation of the said contract by any of the subscribers thereto, except said plaintiff, including not only this defendant but all of the subscribers thereto, and to report the same to this court with his recommendation." To this the defendant objected on the ground that the action was one at law and the damages a question of fact for the jury. The referee proceeded to take the proofs and on March 9, 1921, made a statement or recommendation in the nature of a report to which was attached the testimony in the case. The referee did not state findings of fact nor conclusions of law, nor was he required to do so by the order of his appointment. Upon the coming in of his report proposed findings of fact and conclusions of law in behalf of the defendant were submitted to the court. The court refused to pass upon them holding that this was not a case for findings and an order of confirmation was made dated June 18, 1921, and judgment was entered thereon. Thereafter the defendant moved to vacate the orders of reference, the alleged order of confirmation and judgment entered thereon, and a stipulation was entered into by the parties to the effect that the appellate court might review that question with the same force and effect as if a formal order had been made. The defendant also made a motion for a new trial on the minutes and by stipulation an order was duly entered *nunc pro tunc.* An appeal from the judgment and intermediate orders was duly made and brings up for review in this court all intermediate orders and the order denying the motion granting a new trial.

The complaint alleged the making of the agreement in question, a copy of which was annexed thereto and made a part of the complaint, the substance of which as we have seen was that the plaintiff agreed to build a certain factory for manufacturing butter or cheese and for a milk shipping station, and the defendant with fifty-one others " jointly and severally " undertook and agreed that

there should be delivered at the proposed factory the milk of 800 cows during a period of eight years, each of the milk producers agreeing " each with the other " to deliver at said factory during said period the milk of approximately the number of cows set opposite his name.

It was further alleged in the complaint that the plaintiff duly performed all the conditions of said agreement on his part but that the defendant, who had agreed to take to the said factory the milk of eighteen cows, had failed to do so since the 10th day of October, 1918, " or to comply in any manner with the terms and conditions of the agreement hereinbefore set forth, therein provided to be kept, done and performed by him; " that by reason thereof the plaintiff was damaged in a large amount. The plaintiff demanded judgment that the defendant account for the proceeds from the milk of eighteen cows from the 10th day of October, 1918, up to the time of said accounting; " that plaintiff may have judgment against the said defendant for the amount found due to plaintiff under said agreement upon said accounting with the costs of this action; that plaintiff may have such other and further relief in the premises as to the court shall seem just."

It was undoubtedly the theory of the plaintiff that on the facts as alleged he was entitled to an accounting and for damages. The action, however, was one at law to recover damages for breach of contract. There was no right to an accounting as the only relationship existing between the parties was that of parties to an executory contract. There was no fiduciary relationship out of which the right to an accounting might grow. If the defendant breached the contract the plaintiff's remedy was to recover damages for the breach. It is not the title of the action nor the prayer for judgment but the facts set out in the complaint which determine the kind and character of action. The action cannot be made an equitable one by the demand for relief if no facts are stated in the complaint which would justify equitable relief. It is only where the facts are susceptible of two constructions that the character of the action is determined by the relief demanded. (*Jones* v. *Gould, No. 2*, 123 App. Div. 236; *Behrens* v. *Sturges*, 121 id. 746; *O'Brien* v. *Fitzgerald*, 143 N. Y. 377; *Hackett* v. *Equitable Life Assurance Society*, 50 App. Div. 266; *Williams* v. *Slote*, 70 N. Y. 601.)

The cause of action alleged in the complaint in the case at bar was clearly one at law. The facts alleged justify a judgment for damages only based upon a breach of the contract in question. It was an action at law triable by jury.

All the issues under the pleadings were not tried at one time. The issue as to the breach of the contract was tried by the court

with a jury and the matter of damages was later referred to a referee who reported the testimony with his opinion. The court has the right under section 973 of the Code of Civil Procedure in its discretion to order the trial of one or more issues in advance of the remaining issues in a common-law action triable by a jury. Such procedure is adopted ordinarily in a case where there are preliminary or jurisdictional issues, not involving the merits, the idea being that if such issues are decided favorably to the defendant it is not necessary to examine the merits and, therefore, there will be a saving of time. (*Smith* v. *Western Pacific R. Co.*, 203 N. Y. 499, affg. 144 App. Div. 180.)

In the present case the court tried the issue as to the liability of the defendant separately on the theory that the matter of damage was complicated and would require extensive proof and that if the issue as to liability were resolved in favor of the defendant a great deal of time would be saved. Whether in such a case it is proper to try the merits piecemeal is not here involved for the reason that the parties consented to such a disposition of the issues and agreed to submit the issue of liability to the jury. The record shows that after the defendant rested and the testimony was closed, the court stated that the parties had agreed to this disposition of the case. The court further stated that he intended to submit the matter of damages to a referee. The defendant did not acquiesce in this submission of the question of damages to a referee. He opposed the motion for a reference and a consolidation of the actions and contended at the trial that the present action was one at law. The order of reference shows that the defendant opposed the granting of the same. As this was an action at law it was not referable. It was simply an action for damages for the breach of a contract and in no sense involving any account. (*Untermyer* v. *Beinhauer*, 105 N. Y. 521; *Johnson* v. *Atlantic Ave. R. R. Co.*, 139 id. 449.) The defendant, therefore, was entitled to a jury trial on the question of damages as well as the question of liability unless it was waived. The defendant having made objection it was error to refer the question of damages to a referee.

A serious question arises as to the extent of the liability charged in the complaint against this defendant. The record is in some confusion and it is difficult to determine upon just what theory the matter of liability was alleged and tried. It appears from the reading of the complaint and from a consideration of the testimony presented to the jury on the question of liability, that it was the plaintiff's theory that there should be delivered to the factory the milk of 648 cows, each of the subscribers delivering the milk of the number of cows set opposite his name, and that if one of the

subscribers failed to deliver the milk of the number of cows agreed to be delivered by him the contract was breached.

The evidence, however, and the charge of the court are not inconsistent with another theory which appears to be the correct theory of the plaintiff's cause of action, if he had one, upon a fair interpretation of the contract. A fair interpretation of the contract is that the parties of the second part agreed that there should be furnished to Sayer's factory the milk of 800 cows, and that this agreement was joint and several, each of the parties of the second part binding himself jointly and severally with the party of the first part that the milk of this number of cows would be furnished to the factory. This was the provision in which Sayer was primarily interested and this was the agreement which he was entitled to enforce. There was further agreement that each of the parties of the second part should furnish to the factory the milk of the number of cows set opposite his name, but this agreement was simply an obligation running between the several parties of the second part. It was not an agreement running between the party of the first part on the one hand and the parties of the second part on the other. Thus, if the parties of the second part saw to it that the milk of 800 cows was furnished to Sayer's factory irrespective of the output of their respective dairies, their agreement was performed as between themselves on the one hand and Sayer on the other, but if the parties of the second part failed to deliver to said factory the milk of the number of cows which they had respectively agreed to deliver individually, it was a matter primarily between the parties of the second part alone and would not involve a breach of the agreement with Sayer, unless the number of cows furnishing milk to Sayer's factory fell below 800. If this construction of the contract was what was intended by the parties, and I think it was, then the mere fact that one of the parties failed to furnish the milk of the number of cows set opposite his name in the agreement would not give Sayer a cause of action, because it would not necessarily follow that there was a breach of the contract with Sayer.

Notwithstanding the fact that this seems to be the fair interpretation of the contract and that the complaint has failed to set forth a cause of action against the defendant upon any such theory, no such question was raised upon the trial. Unless we can deduce a theory of the allegations and proofs in accordance with this theory, there ought to be no recovery because there can be no amendment of the pleadings that could create a liability not found in the contract and which never existed. The case was tried upon the theory that the provision as to 800 cows was

partially waived and that the contract was modified so as to require the parties of the second part to furnish the milk of 648 cows instead of 800 cows to Sayer, and although it did not appear from the evidence how many cows were furnishing milk to the factory including the cows of non-contract patrons, there was proof that the defendant failed to furnish the milk of 18 cows and that other parties to the contract failed ·to furnish milk and it was generally assumed as is evidenced by the charge of the court that the number of cows from which milk was furnished was less than 648. The court said: " You will remember this that it was agreed there should be 800 cows, but the plaintiff accepted the contract with only 650 cows. It was the duty of the defendant to see that the milk from that number of cows was delivered to the plaintiff so long as he performed his contract." Thus the theory of the proofs was that there had been a failure of the defendant to comply with his obligation binding upon him jointly with the other producers to see to it that there was a delivery of the milk of 648 cows and to the full extent that there was such a failure he was responsible. His liability was not confined to his failure with respect to his 18 cows. Since the case was tried and submitted to the jury on the proper theory of liability under the contract without any objection or exception on the part of the defendant and by his acquiescence, there is no question in this respect now to be reviewed.

The verdict as to liability must stand and the paramount issue on this appeal relates to the question of damages.

The referee was directed by the order of reference to take proof of the total loss suffered by plaintiff and was not confined to losses sustained by the failure of defendant to furnish the milk of 18 cows. Whether this was error under the peculiar allegations of the complaint is now immaterial in view of the determination of the court to grant a new trial on the question of damages. The defendant has acquiesced in the trial of the correct issue as to liability. Since the issue of liability may be sustained on the ground that there was a failure to furnish the milk of 648 cows it is competent for the court to adjust the damages on the true basis under the contract. If the plaintiff mistakes the true rule of damages in his complaint but the complaint avers a legal wrong and a pecuniary injury, it is competent for the court under the complaint to adjust the recovery upon the true basis. (*Hayes* v. *Durham*, 194 App. Div. 848.) Also, if the proofs, irrespective of the pleadings, establish a legal wrong and a pecuniary injury, on a proper theory, and the parties have acquiesced therein, it is competent for the court to adjust the damages on the true basis. To that end the complaint may be amended to obtain relief appro-

priate to the facts proved, especially where the issue as to damages remains to be tried and thus there can be no surprise. (Civil Practice Act, § 111.)

Having held that the reference was improperly ordered, ordinarily we would not consider the errors of the referee in admeasuring the damages but it is squarely before us and counsel for the respective parties have urged rules of damage so greatly at variance with each other, that, being the only issue remaining to be tried, we feel called upon to lay down the rule appropriate here. The referee in this case has considered and included four items in his calculations of the damages. These are:

1. Difference between the contract price for manufacturing cheese and the cost of making it.

2. Additional expenses that went on at the factory whether the withdrawn milk was delivered or not. He designates these two items as lost profits and computes the amount for the season 1917–18 at $189.44, and for the season 1918–19 at $1,603.36.

3. One-half the proceeds from the sale of whey butter which he states to be $724.80.

4. The diminished value of the factory equipment and contract with the milk withdrawn is stated to be $11,000, concerning which the referee states: " Assuming the difference in value to be a proper basis for this damage, the plaintiff's damage by reason of the violation of the contract by the subscribers is $11,000."

The referee concludes his report by finding that the total damages is the sum of these four items, namely, $13,517.60. The balance of the recovery found in the judgment is represented by interest and costs, the whole judgment amounting to $17,485.86.

While the language of the referee in relation to item No. 4 would indicate that the $11,000 was the total damage, in his final conclusion he treats it as only one of the items of damage, and counsel for the respondent seeks to sustain that item as a proper item of damage representing the plaintiff's loss of future income during the period of the unexpired portion of the contract after figuring the amount of actual losses sustained during the first two years of the contract for which actual figures were obtainable.

The rule of damages adopted was erroneous. The proper rule of damages in this case is the one applied in *Nash* v. *Thousand Island Steamboat Co.* (123 App. Div. 148), where the two lines of cases relied upon by the appellants and the respondents respectively, are discussed and applied. On the breach of the contract the plaintiff was entitled to recover whatever loss he had sustained up to the time of the action and future gains which were prevented by the breach of the contract. The losses actually sustained

and the future gains prevented by the breach could amount to no more than the profits the plaintiff would have made had the contract been continued and carried out for the period of eight years. In assuming any future gains prevented it was unjustifiable to adopt an improper method of determining these damages merely because the actual amount of damage could not be figured with certainty. The jury may be required to exercise their best judgment upon the best evidence obtainable. It was only the profits to be derived from the delivery of the milk of these cows that was in the contemplation of the parties and so far as such profits can be properly proved they form the measure of damage unless special damages not naturally flowing from the breach have been alleged and can be proved. Proof of the nature of the contract, the circumstances surrounding and following its breach, past profits and actual facts transpired are the basis of the calculation. Opinion evidence of the value of the contract is properly excluded in such cases. (*Nash* v. *Thousand Island Steamboat Co., supra.*) The evidence in this case consisting of opinions of experts as to the diminished value of the factory building, equipment and contract was improperly received. I cannot see how the decreased value of the plant had anything to do with the solution of the question. Damage to the plant itself was not within the contemplation of the parties to the agreement. The plaintiff took his chance on having a profitable business for that plant after the eight years. The future condition of the plant and the good will of the business beyond that period were not matters of common interest between the parties. The only thing the plaintiff had a right to anticipate under the contract was the profits in the operation of the factory for eight years by obtaining the milk of these cows during that period and obtaining " the ruling price " for manufacturing or otherwise handling the milk. If there was any other special damage accruing to the plaintiff by reason of the breach such as diminished value of the plant such special damage should have been pleaded, which was not the case here.

In this case if the plaintiff receives the profits he would have made if there had been no breach, he will have recovered his whole loss. The actual loss during the two-year period of experience under the contract from April 1, 1917, to April 1, 1919, is readily determinable and with the other facts in the case is a proper element for consideration of the future gains prevented. The actual loss during the two-year period of experience is properly determined by deducting from the gross profits the actual cost of labor, fuel, materials and such other incidental expenses as would have been incurred in actually handling the milk of the defaulting patrons

if it had been brought to the factory in accordance with the contract. In arriving at the loss of net income by the plaintiff it is improper to deduct from the gross profits that would have been obtained from the defaulting patrons, the cost of constructing and equipping the plant or any item of depreciation thereof or any item of interest on investment or of taxes and insurance upon such plant and equipment. Such items have no place in the calculation because if deducted from the gross profits that would have been obtainable from the defaulting patrons, the plaintiff would have to pay the same out of his own pocket without the help of these defaulting patrons, whereas if the contract had continued to be fulfilled he would have paid them out of his returns from the business brought to him by all of his patrons.

We are not looking to find the profits of the plaintiff on his whole venture in the erection of his plant and in equipping and running it, but only his loss of net income by reason of not having this milk to handle. The question is what would these defendants have contributed to him toward making the plant a success? The cost of the plant has nothing to do with it and was improperly considered. The cost of construction and equipment, the taxes and insurance on the building and equipment all had to be paid any way. So in reaching the net income obtainable from the defaulting patrons during the two years of experience under the contract we have only to find what it would have cost the plaintiff extra to handle this milk if it had come in. That extra cost was properly deductible because the plaintiff did not in fact have to expend that money.

The referee was correct in the method of reaching his first item of actual loss but apparently was in error in the inclusion of improper elements found in his item No. 2, denoting the additional expenses that went on at the factory whether the withdrawn milk was delivered or not. It is not easy to understand just what the referee meant by this item, but it would seem that it was partially a duplication of item No. 1, and partially the inclusion of items like depreciation, taxes and insurance which had no proper place in the calculation.

The item of damage found by the referee in relation to the proceeds of the sale of whey butter likewise seems to be erroneous in that there is no evidence that there has been any deduction of the expenses incurred in the manufacture and sale of the whey butter properly chargeable to that item. From the testimony it is impossible to determine whether or not the allowance of one-half the proceeds of the sale of whey butter was taken into account in fixing two dollars as the ruling price for the second year of the

contract. If so it was proper to include a consideration of the profit that the plaintiff would have received with reference to the sale of whey butter. If on the other hand the arrangement for the distribution of the proceeds of the whey butter was an independent arrangement between the parties and not a basis of calculation of the ruling price for that year, it would seem that this loss of profit was special damage not naturally flowing from the breach of the contract sued upon and, therefore, not a proper item for consideration.

Since the referee has clearly erred in the matter of the measure of damages and the case was improperly referred to a referee over the objection of the defendant, it is unnecessary to consider the question of the failure of the court below to pass upon the proposed findings of the defendant.

The judgment should be reversed and a new trial granted on the question of damages which in the absence of a waiver should be a jury trial.

Judgment and order of reference reversed, and new trial granted only as to the question of damages before a referee to be appointed who shall hear and determine that question, with costs of this appeal to the appellant to abide the event.